**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JOHN F. SHARPE**, Plaintiff, v. **DEPARTMENT OF THE NAVY**, Defendant. | Case No. 1:25-cv-01911 (TNM) |

**MEMORANDUM OPINION**

This Freedom of Information Act case arises from an apparent change to the U.S. Naval Academy's policy for providing copies of certain investigative reports to counsel for accused midshipmen. According to Plaintiff John Sharpe, the Naval Academy in August 2023 discontinued its standard practice of sending copies of these investigative reports to counsel via email. Sharpe submitted a FOIA request for all records related to this perceived change. The Naval Academy complied in part with his request. But it produced only heavily redacted copies of two documents: a draft legal memorandum and a related email. Sharpe now brings this FOIA suit against the Department of the Navy to compel release of the unredacted memo and email. On summary judgment, the Navy argues that FOIA's Exemption 5 protects the documents from disclosure and that releasing the documents would foreseeably harm interests protected by that exemption.

The Court agrees with the Navy. The draft memo contains a subordinate attorney's legal analysis prepared in anticipation of litigation and for a superior's review. The redacted portion of the email describes the same subject matter. Such information falls squarely within Exemption 5 on the grounds of both the work-product doctrine and deliberative-process

privilege. The Navy has also shown that release of the redacted content would foreseeably harm its ability to conduct sensitive legal reviews of its policies. The Navy thus is entitled to summary judgment.

## I.

Sharpe, a retired Navy commander, worked as a paralegal with the Law Offices of Jeffrey E. McFadden, LLC. Sharpe Decl. ¶ 4, ECF No. 51-1. The firm has represented several midshipmen in connection with administrative proceedings brought against them by the Naval Academy. *Id.* ¶¶ 5–7. According to Sharpe, the Naval Academy used to provide as standard practice electronic copies of two types of investigative reports, Preliminary Inquiry Reports and Brigade Investigating Officer Reports, to counsel for midshipmen before administrative proceedings. *Id.* ¶¶ 7–8. But in August 2023, the Naval Academy refused to provide to the firm as a matter of course an electronic copy of a client's records. *Id.* ¶¶ 9–10. Instead, a Naval Academy legal advisor invited the firm either to submit a formal request for the records under FOIA or the Privacy Act, or to make an appointment to view the records in person at the Naval Academy. *Id.* ¶¶ 10, 12. The Naval Academy similarly refused to provide a copy of a different midshipman's Preliminary Inquiry Report in September 2023. *Id.* ¶ 14.

In December 2023, Sharpe submitted a FOIA request for all Naval Academy records related to the policy or practice of providing electronic copies of Preliminary Inquiry Reports to midshipmen or their counsel. Second Am. Compl. ¶¶ 7–8, ECF No. 33; Scheetz Decl. Ex. A, ECF No. 45-2. The Navy granted the request only partially, withholding two related documents. Scheetz Decl. ¶ 7, ECF No. 45-1. Displeased, Sharpe lodged an administrative appeal and eventually brought this FOIA suit. Second Am. Compl. ¶¶ 10, 12, 18. The Navy later provided heavily redacted copies of both documents. Scheetz Decl. ¶ 11; *id.* Ex. B, ECF No. 45-3; *id.* Ex.

C, ECF No. 45-4. One document is a four-page draft legal memorandum, prepared by a Navy attorney, that analyzes an issue related to the authority to disclose Naval Academy records. *Id.* ¶¶ 15–18. The other is a one-page email describing the subject of this draft memo and transmitting it to the drafting attorney's colleague and to a superior attorney for their review. *Id.* ¶¶ 12–14.

The Navy now moves for summary judgment, arguing that it properly redacted these documents under FOIA's Exemption 5 because they are protected by the attorney work-product doctrine, deliberative-process privilege, and attorney-client privilege. Mot. Summ. J. 7–9, ECF No. 45. Sharpe opposes summary judgment. He argues that a genuine issue of material fact precludes summary judgment on the grounds of deliberative-process privilege and that the work-product doctrine does not apply because the memo was not prepared in anticipation of litigation. Opp'n Mot. Summ. J. 6, 8, ECF No. 51.[1]

The Court requested and received an unredacted version of the documents so it could perform an *in camera* review. Min. Order 7/31/2026. The Navy's motion for summary judgment is ripe for the Court's decision.

**II.**

Courts can typically resolve FOIA cases on summary judgment. *See Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). Summary judgment is appropriate when the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Agencies moving for summary judgment in FOIA cases must show that the contested records "are exempt from disclosure under

---

[1] The Navy also redacted certain information under FOIA's Exemption 6. Sharpe does not challenge these redactions. Opp'n Mot. Summ. J. 2.

FOIA." *Shapiro v. Dep't of Just.*, 893 F.3d 796, 799 (D.C. Cir. 2018) (cleaned up). A court may grant summary judgment based solely on an agency's declarations if the declarations "justify the nondisclosure with reasonably specific detail and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Knight First Amend. Inst. at Columbia Univ. v. Cent. Intel. Agency*, 11 F.4th 810, 818 (D.C. Cir. 2021) (cleaned up).

Even if an exemption applies, the agency must still release the records unless it shows that release would cause "reasonably foreseeable harm to an interest that the exemption protects." *Leopold v. Dep't of Just.*, 94 F.4th 33, 37 (D.C. Cir. 2024); 5 U.S.C. § 552(a)(8)(A)(i)(I). The agency "must provide a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede the interests protected by a FOIA exemption." *Leopold*, 94 F.4th at 37 (cleaned up).

More, an agency must release any segregable portions of a record that is otherwise exempt, typically by proceeding "line-by-line." *Porup v. Cent. Intel. Agency*, 997 F.3d 1224, 1239 (D.C. Cir. 2021) (cleaned up). Still, otherwise releasable material may be withheld if it is "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

Sharpe—who initiated the case assisted by his former law firm—now for reasons known best to him, proceeds *pro se* and opted not to cross-move for summary judgment. This *pro se* status entitles Sharpe to special solicitude because "[c]ourts must construe *pro se* filings liberally." *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999). Thus, the Court affords Sharpe "the benefit of the doubt" and liberally construes his summary judgment filings. *Bey v. Wash. Metro. Area Transit Auth.*, 341 F. Supp. 3d 1, 11–12 (D.D.C. 2018) (cleaned up).

**III.**

The Navy has shown that the redacted information falls within FOIA's Exemption 5. Exemption 5 covers "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). In simpler terms, this provision "incorporates the privileges available to Government agencies in civil litigation," including the "attorney work-product privilege" and "the deliberative process privilege." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021). Both the work-product doctrine and the deliberative-process privilege apply to the redacted material here.[2] More, production of the redacted portions would foreseeably harm the Navy's ability to engage in sensitive legal analysis of its policies.

**A.**

The redacted information falls squarely within the work-product doctrine. This foundational privilege "enables a lawyer to develop his mental impressions and legal theories without fear of having his adversaries rummage through them at leisure." *Delaney, Migdail & Young, Chartered v. Internal Revenue Serv.*, 826 F.2d 124, 126 (D.C. Cir. 1987). It applies to "materials prepared by one's attorney in anticipation of litigation." *See Nat'l Ass'n of Crim. Def. Laws. v. Dep't of Just. Exec. Off. for U.S. Att'ys*, 844 F.3d 246, 250 (D.C. Cir. 2016). Both tangible and intangible work product receive protection. *See United States v. Deloitte LLP*, 610 F.3d 129, 136 (D.C. Cir. 2010). And "the question is not who created the document or how they are related to the party asserting work-product protection, but whether the document contains . . . the thoughts and opinions of counsel developed in anticipation of litigation." *Id.*

[2] The Court resolves this motion on the grounds of the work-product doctrine and deliberative-process privilege. It does not consider whether the attorney-client privilege also protects the withheld documents.

To determine whether a document is prepared in anticipation of litigation, the D.C. Circuit applies a "because of" test, asking "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) (cleaned up). Where agency lawyers act "as legal advisors protecting their agency clients from the possibility of future litigation," the D.C. Circuit "reject[s] the need for a specific claim to implicate the privilege." *Nat'l Ass'n of Crim. Def. Laws.*, 844 F.3d at 254 (cleaned up); *see Soghoian v. Dep't of Just.*, 885 F. Supp. 2d 62, 72 (D.D.C. 2012) (collecting cases).

The draft memorandum is attorney work product.[3] The memo is a "draft preliminary analysis" of "legal authorities" about "disclosure issues" prepared by a legal advisor to the Commandant of Midshipmen. Scheetz Decl. ¶¶ 12, 17, 19. Each page contains an unredacted banner stating that it is "LITIGATION/ATTORNEY WORK PRODUCT." *Id.* ¶ 16; *id.* Ex. C. "The memorandum contains material which is identified as legal advice and analysis that is intended to be provided to the Commandant for Midshipman [*sic*] at a future date." *Id.* ¶ 18. And the draft memo "states that it is being prepared in anticipation of future litigation" on the matter. *Id.* ¶ 17.

Sharpe counters that "there is no evidence whatsoever that in September 2023 when the [legal advisor] drafted her memorandum any litigation was contemplated." Opp'n Mot. Summ. J. 8; *see also* Pl.'s Statement of Genuine Issues of Material Fact ¶ 7, ECF No. 50. Though

[3] The Navy explains that the "subject line of the e-mail, the body of the e-mail text, and name of the file attached to the e-mail[] [are] redacted under Exemption (b)(5) . . . for the same reason the contents of the [draft memorandum] is [*sic*] redacted." Scheetz Decl. ¶ 14. Having reviewed the email *in camera*, the Court reaches the same conclusion about the email as it does the memo. For ease of discussion, the Court in Parts III.A and III.B refers mostly to the draft memo, since it is the focus of the parties' briefing.

Sharpe insists that litigation could not have been on the horizon in September 2023 because the Naval Academy at that point had "decided merely to cease providing records as a professional courtesy," Opp'n Mot. Summ. J. 8, the record suggests otherwise. To start, the memo itself states that it is prepared in anticipation of litigation. Scheetz Decl. ¶ 17. Sharpe also admits that he had already complained to the Naval Academy about the withheld records before the memo was drafted. *See* Opp'n Mot. Summ. J. 8. Further, a letter sent by Sharpe's firm to the Commandant, dated September 21, 2023, stated that the firm had already "submitted a FOIA and [Privacy Act] request" for a client's investigative records and warned that refusal to provide the records "would clearly be arbitrary, capricious, and an abuse of discretion." Sharpe Decl. Ex. E 19–20. This letter is dated four days before the legal advisor delivered her memo for review on September 25. *See* Scheetz Decl. Ex. B. Thus, the drafting attorney "could reasonably have anticipated litigation over" production of the withheld documents. *Citizens for Resp. & Ethics in Wash. v. Nat'l Archives & Recs. Admin.*, 583 F. Supp. 2d 146, 160 (D.D.C. 2008).

**B.**

The deliberative-process privilege also applies to the memo and email. The deliberative-process privilege is a form of executive privilege that protects agencies from being "forced to operate in a fishbowl." *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (cleaned up). It protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Nat'l Lab. Rels. Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (cleaned up). The deliberative-process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9

(2001) (cleaned up). So the privilege seeks to "enhance the quality of agency decisions by protecting open and frank discussion." *Id.* at 9 (cleaned up).

To determine whether the deliberative-process privilege applies, courts ask whether a document is both "predecisional" and "deliberative." *Sierra Club*, 592 U.S. at 268. "A document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002) (cleaned up). "Material is deliberative if it reflects the give-and-take of the consultative process," *id.* (cleaned up), or if it was "prepared to help the agency formulate its position," *Sierra Club*, 592 U.S. at 268. Importantly, the "existence of the privilege" does not "turn[] on the ability of an agency to identify a specific decision in connection with which a [document] is prepared" so long as the document played a role in a concrete deliberative process. *Sears*, 421 U.S. at 151 n.18.

First, the memo is predecisional. It is a "draft preliminary analysis" of "legal authorities" prepared by a legal advisor to the Commandant of Midshipmen. Scheetz Decl. ¶¶ 12, 17, 19. In other words, the memo was merely a step in an internal review of disclosure practices. *See id.* ¶ 22. It was not itself a final decision. Reading the memo in context of the unredacted portions of the email transmitting it to other attorneys confirms that it is predecisional. The email's subject line previews a "Draft MFR [Memorandum for the Record]," and the body of the email begins "[h]ere's my draft MFR." *Id.* Ex. B; *see id.* ¶ 12. The authoring legal advisor thus emphasized to the recipients that the memo was a draft subject to their further consideration. More, neither attorney who received the memo for review themselves had "inherent decision[al] authority." *Id.* ¶¶ 12, 19. As the adage goes, writing is rewriting. Multiple reviews by other attorneys lay ahead before this memo, or a future draft, could reach the Commandant and

possibly influence his thoughts on the Naval Academy's disclosure policies. Second, and relatedly, the memo is deliberative. It was "written in order to assist the Commandant's Legal Office in assessing a legal issue about agency policy" and "contains sensitive facts relating to the internal processes of the Navy and legal reasoning in consideration of those facts." *Id.* ¶ 20.

Because the draft memorandum constitutes a subordinate attorney's "evaluations, recommendations, discussions, and analysis . . . prepared for senior-level review and decisionmaking," it "lie[s] at the core of the deliberative-process privilege." *Machado Amadis v. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020); *see also Ctr. for Immigr. Studs. v. U.S. Citizenship & Immigr. Servs.*, 766 F. Supp. 3d 1, 8 (D.D.C. 2025) (holding that deliberative-process privilege applied to memo proposal from agency inferior to superior). As the Supreme Court has explained, "agencies are . . . engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and lower courts should be wary of interfering with this process." *Sears*, 421 U.S. at 151 n.18.

Sharpe insists that there is a genuine issue of material fact as to whether the Navy made a policy decision about disclosure of Preliminary Inquiry Reports in July or August 2023, before the draft memo was written. Opp'n Mot. Summ. J. 5–6; Pl.'s Statement of Genuine Issues of Material Fact ¶¶ 1, 4. Sharpe reasons that if a policy decision did predate the memorandum, then the draft memo might "memorialize[] the rationale behind an adopted policy." Opp'n Mot. Summ. J. 5. Sharpe concludes that any such rationale must be released as part of the agency's "working law." *Id.* at 6 (quoting *Sears*, 421 U.S. at 152–53).

A critical problem with Sharpe's argument is that his speculations give no reason to doubt the Navy's representations in this case. The Navy does not say that the memo

memorializes the rationale behind an already adopted policy. Instead, it attests that the draft memo was written to "assist the Commandant's Legal Office in assessing a legal issue regarding agency policy." Scheetz Decl. ¶ 20. In other words, the memo conducts an "internal review[] for compliance with the law." *Id.* ¶ 22. Sharpe points to no record evidence controverting the Navy's affidavit or suggesting bad faith. *See Knight First Amend. Inst.*, 11 F.4th at 818. And the Court's *in camera* review of the memo confirms Navy's representations. *See Hooker v. Dep't of Health & Hum. Servs.*, 887 F. Supp. 2d 40, 58 (D.D.C. 2012), *aff'd*, No. 13-5280, 2014 WL 3014213 (D.C. Cir. May 13, 2014). Thus, no genuine issue of material fact precludes granting summary judgment to the Navy.

**C.**

The Navy must also establish that it "reasonably foresees that disclosure would harm an interest protected by" a FOIA exemption. 5 U.S.C. § 552(a)(8)(A)(i)(I). The Navy clears that bar here.

The D.C. Circuit has explained that in cases involving the deliberative-process privilege, the foreseeable-harm requirement demands a "focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 370 (D.C. Cir. 2021).

Yet there is good reason to apply a lower bar in the context of the work-product doctrine. "Congress added the foreseeable harm requirement specifically to limit 'agency overuse and abuse of Exemption 5 and the deliberative process privilege.'" *Reps. Comm. for Freedom of the Press v. U.S. Customs & Border Prot.*, 567 F. Supp. 3d 97, 120 (D.D.C. 2021) (quoting *Reps. Comm.*, 3 F.4th at 369). But when it comes to cases involving the work-product doctrine, "the

risk of harm through disclosure is more self-evident and the potential for agency overuse is attenuated." *Id.* (discussing analogous attorney-client privilege). The Supreme Court has explained that the privacy protected by the work-product doctrine is "the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). So violation of the work-product doctrine undermines "the interests of the clients and the cause of justice." *Id.* "Thus, the law already acknowledges and guards against the risk of harm that would come from disclosing" attorney work product. *Reps. Comm.*, 567 F. Supp. 3d at 120.

The Navy states that disclosure of these documents would stifle "frank and open discussion among lawyers" at the Naval Academy and "have a chilling effect on future efforts to review compliance and revision" of internal policies. Scheetz Decl. ¶ 21. It adds that "[r]evealing the internal legal analysis of Navy's in-house lawyers would discourage periodic internal reviews for compliance with the law." *Id.* ¶ 22. Sharpe contends that these statements are too conclusory to satisfy FOIA. Opp'n Mot. Summ. J. 8. This issue might be a closer call were the withheld documents subject only to the deliberative-process privilege. Yet the Court is satisfied that the potential damage to internal discussions by Navy lawyers counts as a "non-generalized explanation of reasonably foreseeable harm" in the attorney work-product context. *See Wonders v. Dep't of Army Off. of Gen. Couns.*, 749 F. Supp. 3d 122, 133 (D.D.C. 2024) (cleaned up) (attorney-client privilege context), *aff'd,* No. 24-5214, 2025 WL 717386 (D.C. Cir. Feb. 28, 2025).

Finally, the Navy has shown with "reasonable specificity" that the documents withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996) (cleaned up). The Navy conducted a line-by-line review of the documents and

determined that no "additional non-exempt, segregable information . . . could be released." Scheetz Decl. ¶ 23. That attestation entitles the Navy to "a presumption that [it] complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Sharpe produces no evidence to rebut this presumption. *See id.* The Court's *in camera* review of the documents confirms this representation. More, the withheld documents are protected by work-product doctrine and so "segregability is not required." *Jud. Watch, Inc. v. Dep't of Just.*, 432 F.3d 366, 371 (D.C. Cir. 2005).

**IV.**

The Navy has carried its burden to show that the withheld documents fall within both the work-product doctrine and the deliberative-process privilege. The Navy has also explained that producing the documents would foreseeably harm its ability to engage in important legal reviews of its policies and practices. The withheld documents are not, and need not be, further segregable. The Navy thus is entitled to summary judgment. A separate Order will issue today.

Dated: August 21, 2026

TREVOR N. McFADDEN
United States District Judge